Slip Op. 18-115

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| POSCO, et al., <br><br>    Plaintiffs, <br><br>and <br><br>AK STEEL CORPORATION, et al., <br><br>    Plaintiff-Intervenors, <br><br>v. <br><br>UNITED STATES, <br><br>    Defendant, <br><br>and <br><br>STEEL DYNAMICS, INC., et al., <br><br>    Defendant-Intervenors. | Before: Mark A. Barnett, Judge <br><br> Consol. Court No. 16-00225 |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's Final Results of Redetermination.]

Dated: September 10, 2018

Donald B. Cameron, Brady W. Mills, Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, and Eugene Degnan, Morris, Manning & Martin LLP, of Washington, DC, for Plaintiff POSCO.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With her on the brief were Chad A. Readler, Acting Assistant Attorney General, and Jeanne E. Davidson, Director.  Of counsel on the brief was Natan P. L. Tubman, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Timothy C. Brightbill</u>, <u>Alan H. Price</u>, <u>Tessa V. Capeloto</u>, and <u>Adam M. Teslik</u>, Wiley Rein LLP, of Washington, DC, for Consolidated Plaintiff and Defendant-Intervenor Nucor Corporation.

Barnett, Judge:  This matter is before the court following the U.S. Department of Commerce's ("Commerce" or the "agency") redetermination upon remand in this case. *See* Confidential Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF No. 112-1.  For the reasons stated below, Commerce's Remand Results are sustained.[1]

### BACKGROUND

The court assumes familiarity with the facts of this case as stated in *POSCO v. United States* ("*POSCO I*"), 42 CIT ___, 296 F. Supp. 3d 1320 (2018).  The factual and legal background relevant to this remand is summarized herein.

In this consolidated action, Plaintiff POSCO ("POSCO") challenged Commerce's final determination in its countervailing duty ("CVD") investigation of cold-rolled steel products from the Republic of Korea ("Korea").  *See Countervailing Duty Investigation of Certain Cold-Rolled Steel Flat Products from the Republic of Korea*, 81 Fed. Reg. 49,943 (Dep't Commerce July 29, 2016) (final aff. determination) ("*Final Determination*"), ECF No. 41-4, and accompanying Issues and Decision Mem., C-580-882 (July 20, 2016) ("I&D Mem."), ECF No. 41-5, as amended by *Certain Cold-Rolled Steel Flat Products from Brazil, India, and the Republic of Korea*, 81 Fed. Reg. 64,436

---

[1] The administrative record filed in connection with the Remand Results is divided into a Public Administrative Record, ECF No. 114-2, and a Confidential Administrative Record, ECF No. 114-3.

(Dep't Commerce Sept. 20, 2016) (am. final aff. countervailing duty determination and countervailing duty order) ("*Amended Final Determination*"), ECF No. 41-3. In particular, POSCO (a Korean cold-rolled steel producer) challenged Commerce's use of the facts available with an adverse inference (referred to as "adverse facts available" or "AFA") for several reporting errors and its selection and corroboration of the adverse facts available rates. *See* Confidential Mot. of Pl. POSCO for J. on the Agency R., ECF No. 53, and Confidential Pl. POSCO's Br. in Supp. of its Mot. for J. on the Agency R. at 2-3, ECF No. 59-1.[2] The court previously sustained Commerce's use of the adverse facts available. *See POSCO I*, 296 F. Supp. 3d at 1336-47. The court remanded Commerce's selection of the highest calculated rates to use as the adverse facts available rate and its corroboration of one of the selected rates. *Id.* at 1347-54.

*Selection of Subsidy Rates*

Commerce's selection of subsidy rates when making an adverse inference is governed by 19 U.S.C. § 1677e(d) (2015).[3] Subsection (d)(1) permits Commerce to

---

[2] Consolidated Plaintiff Nucor Corporation ("Nucor") and Plaintiff-Intervenors ArcelorMittal USA LLC, AK Steel Corporation, and United States Steel Corporation (domestic cold-rolled steel producers) also challenged certain aspects of Commerce's final determination. Because the court sustained Commerce's determinations thereto, the Remand Results address challenges raised solely by POSCO. *See POSCO I*, 296 F. Supp. 3d at 1354-63.

[3] The Trade Preferences Extension Act ("TPEA"), Pub. L. No. 114–27, § 502, 129 Stat. 362, 383–84 (2015), made several amendments to the antidumping and countervailing duty laws, including the addition of subsection (d) to 19 U.S.C. § 1677e. The TPEA amendments affect all CVD determinations made on or after August 6, 2015. *See* Dates of Application of Amendments to the Antidumping and Countervailing Duty Laws Made by the Trade Preferences Extension Act of 2015, 80 Fed. Reg. 46,793 (Dep't Commerce Aug 6, 2015). All references to 19 U.S.C. § 1677e are to the amended version of the statute.

"use a countervailable subsidy rate applied for the same or similar program in a countervailing duty proceeding involving the same country," or "if there is no same or similar program, use a countervailable subsidy rate for a subsidy program from a proceeding that the administering authority considers reasonable to use." 19 U.S.C. § 1677e(d)(1)(A). Subsection (d)(2) directs Commerce to base its selection of the subsidy rate, which may include the highest rate, on an "evaluation . . . of the situation that resulted in the [agency] using an adverse inference." *Id.*, § 1677e(d)(2).

In the Issues and Decision Memorandum accompanying the *Final Determination*, Commerce explained that "[i]t is the [agency's] *practice* in CVD proceedings to compute an AFA rate for non-cooperating companies using the *highest* calculated program-specific rates determined for a cooperating respondent in the same investigation, or, if not available, rates calculated in prior CVD cases involving the same country." I&D Mem. at 12 (emphasis added).[4] The court remanded Commerce's selection of the

---

[4] Specifically, Commerce selected its rates pursuant to the following hierarchical methodology:
> [Commerce] applies the highest calculated rate for the identical subsidy program in the investigation if a responding company used the identical program, and the rate is not zero. If there is no identical program match within the investigation, or if the rate is zero, [Commerce] uses the highest non-*de minimis* rate calculated for the identical program in a CVD proceeding involving the same country. If no such rate is available, [Commerce] will use the highest non-*de minimis* rate for a similar program (based on treatment of the benefit) in another CVD proceeding involving the same country. Absent an above-*de minimis* subsidy rate calculated for a similar program, [Commerce] applies the highest calculated subsidy rate for any program otherwise identified in a CVD case involving the same country that could conceivably be used by the non-cooperating companies.

I&D Mem. at 12.

highest calculated subsidy rates as lacking the case-specific evaluation required by subsection (d)(2).  *POSCO I*, 296 F. Supp. 3d at 1349-50.  The court reasoned that subsection (d)(2) contemplates a range of possible rates from among which Commerce may choose based on its "evaluation of the specific situation," and faulted the agency for "fail[ing] to fulfill its statutory duty because it failed to explain why this case justified its selection of the highest rates."  *Id.* at 1349; *see also id.* at 1350 ("[Section] 1677e(d)(2) contemplates the selection of the highest rate when the situation merits the highest rate. . . . Commerce failed to evaluate whether the circumstances in this case merited the highest rate.").

On remand, Commerce explained that by selecting the highest rate within each prong of its adverse facts available hierarchy, it "strikes a balance between [] three necessary variables: inducement, industry relevancy, and program relevancy."  Remand Results at 10-12.  Commerce further explained that it interprets 19 U.S.C. § 1677e(d)(2) to constitute

> an exception to the selection of an adverse facts available rate under [§ 1677e(d)(1)]; that is, after 'an evaluation of the situation that resulted in the application of an adverse inference,' Commerce may decide that given the unique and unusual facts on the record, the use of the highest rate within that step is not appropriate.

*Id.* at 12.  Commerce evaluated the situation that resulted in the use of adverse inferences and concluded that no deviation from the highest rates was merited.  *See id.* at 12-16.

*Corroboration of Subsidy Rates*

"Corroborat[ion] means that the [agency] will examine whether the secondary information to be used has probative value," 19 C.F.R. § 351.308(d), which includes an examination of its reliability and relevance, *Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 41 CIT ___, ___, 273 F. Supp. 3d 1225, 1247 (2017) (citing *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1354 (Fed. Cir. 2015)). For the *Amended Final Determination*, pursuant to the aforementioned hierarchy, Commerce applied a 1.64 percent rate associated with an insurance program deemed countervailable in *Bottom Mount Combination Refrigerator–Freezers from the Republic of Korea*, 77 Fed. Reg. 17,410 (final aff. countervailing duty determination) (Dep't Commerce March 26, 2012) ("*Refrigerators from Korea*"), for several of POSCO's countervailable programs. *POSCO I*, 296 F. Supp. 3d at 1335-36; *see also Am. Final Determination*, 81 Fed. Reg. at 64,437. The court remanded Commerce's selection of the 1.64 percent rate because the rate was "derived from estimates Commerce made on the basis of an adverse inference" and, thus, was not an "[a]ctual rate[ ] calculated based on actual usage of a countervailable program by a Korean company." *POSCO I*, 296 F. Supp. 3d at 1353 (internal quotation marks, emphasis, and citation omitted). Accordingly, the court determined that the reliability of that rate was unsupported by substantial evidence. *See id.* at 1351, 1353.

In the *Amended Final Determination*, Commerce had also applied a 1.05 percent rate associated with a tax deduction program found countervailable in *Large Residential Washers from the Republic of Korea*, 77 Fed. Reg. 75,975 (final aff. countervailing duty

Consol. Court No. 16-00225Page 7

Consol. Court No. 16-00225                                                                                              Page 7

determination) (Dep't Commerce December 26, 2012) ("*Washers from Korea*"), to certain other programs found to be countervailable.  The court found that Commerce properly corroborated that rate.  *POSCO I*, 296 F. Supp. 3d at 1353-54.

On remand, Commerce replaced the 1.64 percent rate from *Refrigerators from Korea* with the 1.05 percent rate from *Washers from Korea* that the court previously concluded was properly corroborated.  See Remand Results at 19-20.

JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to § 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012), and 28 U.S.C. § 1581(c).  The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order."  *SolarWorld Americas, Inc. v. United States*, 41 CIT ___, ___, 273 F. Supp. 3d 1314, 1317 (2017) (internal quotation marks and citation omitted).

DISCUSSION

POSCO summarily contends that Commerce's rate selection analysis lacks compliance with the court's decision in *POSCO I*.  Pl. POSCO's Comments on the U.S. Dep't of Commerce's June 6, 2018 Final Redetermination Pursuant to Court Remand ("POSCO Comments") at 2, ECF No. 116.  POSCO further contends that "the 1.05 percent rate is overstated."  *Id.*  However, in the interest of "a speedy end to this litigation," POSCO refrained from "commenting further" on either issue.  *Id.*

Nucor and Defendant United States urge the court to sustain the Remand Results. Resp. to Pl. POSCO's Comments on the U.S. Dep't of Commerce's June 6, 2018 Final Redetermination Pursuant to Court Remand ("Nucor Reply"), ECF No. 117; Def.'s Resp. to Comments on Remand Results, ECF No. 118. Nucor specifically requests the court to "treat the Remand Results as unopposed" because POSCO "failed to exhaust its administrative remedies and otherwise failed to articulate any basis for the [c]ourt [to] fault the agency's Remand Results." Nucor Reply at 1.

The court first directed Commerce to base its selection of the subsidy rate on an evaluation of the specific situation that merited the adverse inferences, and apprise the court of the basis for its findings thereto. *POSCO I*, 296 F. Supp. 3d at 1349-50. On remand, Commerce explained, with citations to supporting evidence, why this case did not merit a deviation from the highest calculated rate selected pursuant to Commerce's hierarchical methodology. Remand Results at 12-16. To the extent POSCO seeks to challenge Commerce's findings or its interpretation of subsection (d)(2) as functioning as an "exception" to its practice of selecting the highest rates from within each prong of its hierarchy, *see* POSCO Comments at 2, POSCO has failed to exhaust its administrative remedies, *see, e.g., Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383 (Fed. Cir. 2008) (failure to raise an issue on remand precludes parties from raising that issue before the court); Remand Results at 21 (noting that POSCO did not provide substantive comments on the draft remand results). Likewise, the court considers POSCO's failure to articulate any grounds for its assertion that Commerce failed to fully comply with the court's remand order as an implied waiver of that

argument.  *See Home Prods. Int'l, Inc. v. United States,* 36 CIT \_\_\_, \_\_\_, 837 F. Supp. 2d 1294, 1301 (2012) (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.")).

      Next, the court directed Commerce to reconsider its selection and corroboration of the 1.64 percent subsidy rate derived from *Refrigerators from Korea*.  *POSCO I*, 296 F. Supp. 3d at 1353.  Commerce did so, and replaced it with the 1.05 percent subsidy rate derived from *Washers from Korea*, which the court had found to be properly corroborated.  Remand Results at 19-20; *POSCO I*, 296 F. Supp. 3d at 1354.  POSCO failed to substantively challenge Commerce's redetermination at the agency level and before the court.  *See* Remand Results at 22; POSCO Comments at 2.  Accordingly, the court sees no reason to disturb Commerce's redetermination.  *See Mittal Steel*, 548 F.3d at 1383; *Home Prods. Int'l,* 837 F. Supp. 2d at 1301.

## CONCLUSION AND ORDER

      For the foregoing reasons, it is hereby **ORDERED** that Commerce's Remand Results are sustained.  Judgment will enter accordingly.

                                  /s/     Mark A. Barnett
                                  Mark A. Barnett, Judge

Dated: <u>September 10, 2018</u>
      New York, New York